James E. PERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–96–00094–CR.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 12, 1997.

Decided Nov. 13, 1997.

Roger Bridgwater, Houston, for appellant.

Keli Pool Roper, Assistant District Attorney, Houston, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

James E. Perry was convicted of criminal nonsupport. A jury found him guilty and set his punishment at two years in a state jail facility. The conviction is affirmed.

Perry and his wife were divorced on September 13, 1991. In the divorce decree, Perry was ordered to pay $300.00 a month child support for the care of his son. The State alleged that Perry did not make any of the payments, and the grand jury indicted him for criminal nonsupport.

The State called two witnesses. The first was a child support enforcement officer for the Attorney General. Through this witness the State offered and the court admitted three exhibits into evidence and elicited testimony from the witness based on those exhibits. The first exhibit was the state registry for child support payments, and it was admitted without objection. This registry stated that no payments had been received from

Perry. The second exhibit was Perry's divorce decree, and it was also admitted without objection. The third exhibit was a calculation summary of child support that had accrued and payments that were due. It was a list of all the unpaid dates when Perry's child support payments were due and the amounts due, with a total of the unpaid installments at the bottom of the exhibit. The officer testified that she created the exhibit, and she testified to all the required business records predicate questions. Perry objected to this exhibit on the ground that it was hearsay. The trial court overruled the objection. The State then elicited testimony from the officer that Perry was $16,650.00 in arrears, which was based on the figures in State's exhibit number three. On cross-examination the officer stated that, in creating the exhibit, she reviewed records other than those in her control. At this point, Perry objected to the officer's entire testimony and evidence offered through her because her work was based on hearsay and an investigation of records for which she was not the custodian. Alternatively, Perry objected that the officer's testimony and the evidence presented through her testimony violated his right to confront and cross-examine witnesses against him. The trial court overruled these objections.

The State's second witness was Perry's ex-wife. She testified that she had not received any child support payments from either the Harris County child support system or from Perry himself. Further, she testified that she believed that Perry intentionally or knowingly failed to make the required support payments.

■ Perry's sole argument in this appeal is that the trial court erred in admitting the testimony of the child support officer and the documents presented through her testimony because they were based on documents over which she did not have custodial authority.

■ A threshold question is whether Perry preserved his complaint for review. To preserve error for review, a party must make a timely and specific objection that is followed by an adverse ruling. TEX.R.APP. P. 33.1 (formerly TEX.R.APP. P. 52(a)); *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App. 1991). The objection must be made as soon

as the basis for the objection becomes apparent; otherwise, the objection is waived. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim.App.1995); *Miller v. State*, 741 S.W.2d 382, 391 (Tex.Crim.App.1987); *Miller v. State*, 939 S.W.2d 681, 688 (Tex.App.—El Paso 1996, no pet.). Perry did not object to either State's exhibits one or two when they were admitted into evidence, and he did not object to any of the testimony elicited from the officer about them during the State's direct examination. The first time Perry objected to the evidence was after he had completed cross-examination. Thus, Perry waived any error in the admission of State's exhibits one and two and the officer's testimony based on those exhibits.

Before the trial court admitted State's exhibit number three, Perry objected to it and took the officer on voir dire. The officer admitted that in preparing State's exhibit three she based some of her information on records and court files over which she had no custodial control. Based on this revelation Perry objected to the exhibit as hearsay, and the trial court overruled. Subsequently, the prosecutor asked the officer how far in arrears Perry was in his child support payments. The officer answered that Perry was $16,650.00 in arrears. Perry did not object. Thus, Perry did not object to the question and answer that contained the whole point of the calculation summary report. A party desiring to complain about particular evidence must object each time that evidence is offered, or the objection is waived. *Moyer v. State*, 948 S.W.2d 525, 527–28 (Tex.App.— Fort Worth 1997, no pet. h.); *Mack v. State*, 872 S.W.2d 36, 38 (Tex.App.—Fort Worth 1994, no pet.). Although Perry objected to the admission of the calculation summary report when it was offered by the State, he did not object when the witness testified about the contents of the report. Thus, he did not preserve error.

■ Even if Perry had preserved his complaint, the trial court did not err in admitting the calculation summary report. Generally, hearsay is not admissible unless it comes within an exception prescribed by statute or the Texas Rules of Evidence. TEX.R.CRIM. EVID. 802. The trial court is the intended

arbiter of whether hearsay is admissible under the exceptions to the general rule of exclusion of hearsay. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

■ Hearsay is any out-of-court statement offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM. EVID. 801(d). State's exhibit number three is a calculation summary report created by the child support enforcement officer, which calculates the total arrearage that Perry owes for his child support. This exhibit is a statement prepared by the officer while she was not testifying, and it was offered to prove the truth of the matter asserted, i.e., that Perry is behind in his support payments by $16,650.00. Consequently, the report is hearsay, and to be admissible it must fall under one of the exceptions to the hearsay rule.

The State argues that the report falls under the exception for records of regularly conducted activity. TEX.R.CRIM. EVID. 803(6). Evidence admissible under this rule, however, may still be inadmissible if it does not meet the requirements of TEX.R.CRIM. EVID. 803(8). In other words, if a public record is inadmissable against a defendant due to the limitations of Rule 803(8)(B) or (C), then the record may not alternatively be admitted under Rule 803(6) even though all the requirements are met. *Cole v. State*, 839 S.W.2d 798, 804–06 (Tex.Crim.App.1990); *Nevarez v. State*, 832 S.W.2d 82, 85 (Tex.App.—Waco 1992, pet. ref'd). Otherwise, it would allow a party to circumvent the express exceptions listed in Rule 803(B) and (C) by "back-dooring" the evidence via Rule 803(6).

The public records and reports exception (Rule 803(8)) allows the admission in evidence of records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel, or (C) against the State, factual findings resulting from an investigation made pursuant to authority granted by law. TEX. R.CRIM. EVID. 803(8). Additionally, it allows the trial court to exclude a report that would otherwise fall under this exception if sources of information or other circumstances indicate a lack of trustworthiness of the report. *Id.* The general policy behind this exception is that public records and reports are inherently reliable because of the presumptions that officers will perform their duties, that officers lack a motive to make false reports, and that public inspection of the reports will disclose inaccuracies. MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE, EVIDENCE § 6759 (Interim Edition 1997). Further, one other motivating factor in creating this exception is that requiring state officials to appear in court and testify about the information in their records and reports would be inconvenient and time consuming for the officials. JOHN WILLIAM STRONG, MCCORMICK ON EVIDENCE § 295 (4th ed.1992).

We may look to federal cases that interpret the Federal Rules of Evidence for guidance as to the scope and applicability of the Texas Rules of Criminal Evidence because our rules were patterned after the federal rules. *Cole v. State*, 839 S.W.2d at 801. Also, because Texas Rule of Criminal Evidence 803(8) is worded almost identically to its federal counterpart, Texas courts weigh federal precedent more heavily in applying this exception. *Id.* at 801–02.

For the calculation summary report to fit under the public records and reports exception, it must contain information described in either (A), (B), or (C) of Rule 803(8). *Philpot v. State*, 897 S.W.2d 848, 851–52 (Tex.App.—Dallas 1995, pet. ref'd). Also, each type of information is not mutually exclusive; a report may contain some, all, or none, of the information listed in (A), (B), or (C). *Cole v. State*, 839 S.W.2d at 802.

■ The first type of information that may be set forth in a public record or report is that of the activities of an office or agency. An example of this type of information is the record of receipts and disbursements of the Treasury Department. JOHN WILLIAM STRONG, MCCORMICK ON EVIDENCE § 296 (4th ed.1992). A further example is a criminal person case list printed out of a district attorney's computer, indicating that a venire person had a pending theft by check case. *See Watson v. State*, 917 S.W.2d 65, 67–68 (Tex.App.—Fort Worth 1996, pet. ref'd).

The report in this case does not contain the activities of the Child Support Enforcement Division of the Attorney General's office, so it does not describe information enumerated in (A).

■ The third type of information that may be set forth in public records or reports is factual findings based on an investigation. These investigative reports are not limited to only factual findings as the rule might suggest. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988). Investigatory reports may contain opinions or conclusions, as long as they are based on a factual investigation and they satisfy the trustworthiness provision of Rule 803(8). *Id.*; *Cowan v. State*, 840 S.W.2d 435, 437 (Tex.Crim.App.1992). The calculation summary report does describe factual findings resulting from an investigation made by the officer. The officer investigated Perry and researched the dates Perry was required to pay child support but failed to do so. This led to a report compiling that information to create a total amount of arrearage. Thus, the report did set forth information in (C); however, this information may not be introduced against a defendant. FED. R. EVID. 803(8) advisory committee's note.[1] Rule 803(8) excludes from the hearsay rule "reports ... setting forth ... (C) *against the state*, factual findings resulting from an investigation...." TEX.R.CRIM. EVID. 803(8) (emphasis added). Consequently, this type of report may be admitted by the defendant against the State, but not vice versa. The calculation summary report was not admissible against Perry under Section (C) of Rule 803(8).

■ The second type of information that may be set forth in a public record or report is a matter observed pursuant to a duty imposed by law and a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel. TEX.R.CRIM. EVID. 803(8)(B). Initially, we must determine whether the calculation summary contains "matters observed." A strict reading of this phrase would limit it to situations where an official actually observed

some act, process, etc. An example of this would be a medical examiner who observes a victim's body during an autopsy. *See, e.g., Garcia v. State*, 868 S.W.2d 337 (Tex.Crim. App.1993). However, this phrase has been extended to information such as a defendant's driving record. *See, e.g., Spaulding v. State*, 896 S.W.2d 587, 588 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Smith v. State*, 895 S.W.2d 449, 455 (Tex.App.—Dallas 1995, pet. ref'd); *Abbring v. State*, 882 S.W.2d 914, 915 (Tex.App.—Fort Worth 1994, no pet.); *Tanner v. State*, 875 S.W.2d 8, 9 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). A driving record is similar to a calculation summary report in that both are compilations of matters observed by someone other than the person preparing the exhibit. The DPS officer who prepares a defendant's driving record never actually observes a police officer pull the defendant over and ticket him. Similarly, the child support enforcement officer never actually saw Perry fail to pay his child support. But both the DPS officer and the child support enforcement officer relied on other officers' observations in preparing the reports. We hold that the calculation summary report does contain "matters observed" because some official observed that Perry did not make a child support payment on a particular date and recorded that omission into a computer. The child support officer then used this recorded, observed omission in preparing the calculation summary.

■ Even though the report did contain "matters observed," Rule 803(8)(B) requires that there be some duty imposed by law to report these matters. The child support officers at the Attorney General's office do have a duty to report when a father who is obligated to pay child support through the Attorney General's office does not do so.

■ Rule 803(8)(B) has a specific circumstance when official reports are not admissible. The report is not admissible if it contains matters observed by police officers and other law enforcement personnel. TEX. R.CRIM. EVID. 803(8)(b). This limitation is

---

1. "[E]valuative reports ... are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case." FED.R.EVID. 803(8) advisory committee's note.

based on the presumption that observations by an officer at a scene of a crime are not as reliable as observations by other public officials. *United States v. Ware*, 247 F.2d 698, 700 (7th Cir.1957). This is due to the adversarial nature of the confrontation between the defendant and the police in the criminal context. *Id.*

■ We use a two-prong test to determine whether the child support officer is considered "other law enforcement personnel." *Garcia v. State*, 868 S.W.2d at 340. First, a court should consider whether the report is an objective, routine, determination of unambiguous facts prepared by an official with no inherent motivation to distort the results. *Id.* at 341. The calculation summary report contains information that is objective and routine. Whether Perry paid his child support payments is an unambiguous factual matter. Further, the subjective degree of the report should be considered in determining whether the official had a motive to distort the report's results. *Id.* There is no degree of subjectiveness to the calculation summary report. Thus, the first prong of the test decidedly falls in favor of the admission of the report.

Second, the adversarial context in which the report was prepared should be considered in determining the admissibility of that report. *Id.* at 342. There is no evidence in the record as to when the calculation summary report was created, but the officer testified that it was in the ordinary course of her duties to create and keep the calculation summary report. Further, it is not the main duty of the child support officer to testify in criminal trials, although she may be required to do so on some occasions. Moreover, the Texas Court of Criminal Appeals has held that even matters observed by police officers are admissible, in spite of the express exclusion, if the observations were made and recorded in a ministerial way. *Pondexter v. State*, 942 S.W.2d 577, 585 (Tex.Crim.App. 1996). The court stated that the reasons for possible impairment of judgment of the police officers and law enforcement personnel are not implicated in situations where officers are conducting routine business matters, such as the recording of objective observations. *Id.*

We conclude that the trial court did not abuse its discretion in admitting the report under the public records exception.

■ Further, evidence may come within more than one exception to the hearsay rule. Because the exhibit here was not expressly excluded by the public records exception, it may concurrently meet the records of regularly conducted activity exception. TEX. R.CRIM. EVID. 803(6). Laying the foundation for a record under Rule 803(6) requires proof of three basic facts: (1) that the record was made by or from information transmitted by a person with personal knowledge of the events or conditions recorded; (2) that the record was made at or near the time of the events or conditions recorded; and (3) that it was in the ordinary course of the reporting entity's business to make and keep such records. There must also be no indication that the source of information or the method of preparation lacks trustworthiness. There is no requirement that the testifying witness must have created the records, or even have personal knowledge of the contents of the records. *Brooks v. State*, 901 S.W.2d 742, 746 (Tex.App.—Fort Worth 1995, pet. ref'd); *Montoya v. State*, 832 S.W.2d 138, 141 (Tex. App.—Fort Worth 1992, no pet.). The testifying witness only must have personal knowledge of the mode of preparation of the records. *Brooks v. State*, 901 S.W.2d at 746. In this case, the officer testified that she is the custodian of records of child support payments that are due; that exhibit three was prepared by a person with personal knowledge of the facts it contains, and it was in the regular course of business to maintain records and summaries of the amounts owed; and that the reports were kept in the regular business of the Child Support Enforcement Division. There is no indication that the information or preparation of the report lacks trustworthiness. Thus, the foundation was properly laid, and the trial court properly admitted the report as a record of regularly conducted activity.

A report under the public records exception or the records of regularly conducted activities exception to the hearsay rule may present a trial court with a double hearsay problem. If a report contains some hearsay

statement, the hearsay statement must fall under some hearsay exception of its own because neither the public records and reports exception nor the records of regularly conducted activities exception protects hearsay within hearsay. TEX.R.CRIM. EVID. 805; *Mary Lee Foundation v. Texas Employment Comm'n,* 817 S.W.2d 725 (Tex.App.—Texarkana 1991, writ denied); *First Southwest Lloyds Ins. Co. v. MacDowell,* 769 S.W.2d 954, 959 (Tex.App.—Texarkana 1989, writ denied). Perry argues that since the report in this case is based on other records not admitted into evidence, it is inadmissible hearsay even though it may be a record of regularly conducted activity.

Often a record of regularly conducted activity incorporates and summarizes other records and materials. Although the calculation summary record is a summary of underlying records, it is itself a record of regularly conducted activity. The child support enforcement officer testified that it is in the ordinary course of her department's job to make and keep such calculation summary records. Thus, this record is to be afforded the same deference that other records of regularly conducted activities are afforded. *See Curran v. Unis,* 711 S.W.2d 290, 294 (Tex.App.—Dallas 1986, no writ); *McAllen State Bank v. Linbeck Constr. Corp.,* 695 S.W.2d 10, 16 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Therefore, the report does not present a double hearsay problem.

Even if Perry did preserve error, and assuming for argument that there was error in the admission of State's exhibit number three, the error was harmless. In determining whether an error is harmful, an appellate court should isolate the error and all its effects and ask whether a rational trier of fact might have reached a different result if the error had not been committed. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989).

■ Error in the admission of evidence can be rendered harmless where other admissible evidence proves the same facts that the inadmissible evidence sought to prove. *Anderson v. State,* 717 S.W.2d 622, 627 (Tex. Crim.App.1986); *Jackson v. State,* 888 S.W.2d 912 (Tex.App.—Houston [1st Dist.] 1994, no pet.). State's exhibit number three was a simple list of dates on which Perry had

failed to pay his child support, followed by a total at the end of the list. There was other evidence adduced at trial that proved that Perry had not paid any of his child support. His ex-wife testified that she had not received any money from Perry, either through the Harris County child support system or directly from him. This evidence, when used in conjunction with the divorce decree, would allow the trier of fact to determine the total arrearage that Perry had accumulated. Further, the ex-wife testified that she felt Perry had intentionally or knowing failed to make the required support payments. There was ample admissible evidence that proved the same issue that State's exhibit number three went to prove, thus, any error in its admission was harmless.

The judgment is affirmed.