Edward Dee **BROOKS**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–91–305–CR.

Court of Appeals of Texas, Fort Worth.

· June 7, 1995.

Rehearing Overruled Aug. 3, 1995.

D. Keith Orsburn, Denton, for appellant.

Bruce Isaacks, Dist. Atty., Kathleen A. Walsh, David C. Colley, Stacy Scofield and Nancy Jessee, Asst. Dist. Attys., Denton, for appellee.

Before CAYCE, C.J., and LATTIMORE and RICHARDS, JJ.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

RICHARDS, Justice.

The court has considered the State's petition for discretionary review. We hereby withdraw our opinion and judgment on remand of December 21, 1994, reconsider and modify the same, and substitute the following:

Edward Dee Brooks was convicted by a jury of the offense of aggravated robbery for the robbery of a teller at a savings and loan association. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon 1994).[1] The teller, Jeanice Madewell, testified that Brooks robbed her at gunpoint. The jury assessed punishment, enhanced by two prior felony convictions, at ninety-nine years' imprisonment in the Texas Department of Corrections (now known as the Institutional Division of the Texas Department of Criminal Justice). This court affirmed the conviction in an unpublished opinion. On remand from the court of criminal appeals we reconsider Brooks' sixth and eighth points of error.

There is an ambiguity in the opinion on appellant's petition for discretionary review which requires this court to determine the scope of the remand. The opinion states:

In part of Appellant's second ground for review he contends the Court of Appeals did not address his argument in his fourth point of error that under the *Gaskin*[2] rule he was entitled to a transcription of a witness' testimony given at a previous trial.

The ambiguity lies in the fact that the part of the second ground for review which addresses the denial of a transcription of testimony refers to Brooks' sixth point of error.

The arguments of the fourth point of error are raised in the third ground for review. While this point of error does raise a *Gaskin* argument, it concerns the failure of the State to produce a statement made by a witness prior to any trial.

We review the sixth point of error instead of the fourth because the court of criminal appeals directs us towards the question involving transcription of prior testimony at a trial. The opinion further states that "Appellant's remaining grounds of error, including that part of ground two not involving the transcription of previous testimony, are refused." This language controls the mislabelling of the points of error.

Brooks raises two points of error on remand. In his sixth point of error he argues the trial court erred in refusing to order the State to produce the transcripts of a witness's testimony from an earlier trial. In his eighth point of error Brooks argues that the court erred in admitting certain medical records.

We affirm.

## SIXTH POINT OF ERROR

■ Brooks' sixth point of error asserts the trial court committed fundamental error in refusing to order the State to produce a transcription of the written testimony of the eyewitness, Jeanice Madewell, given in the trial of co-defendant Johnny Zurfluh. After Madewell testified on direct examination, Brooks' attorney requested a transcript of Madewell's testimony from the Zurfluh trial at the conclusion of Madewell's testimony in the case at bar. Brooks contends a transcription of the prior statements made by Ms. Madewell under oath in the Zurfluh trial were discoverable under the *Gaskin* rule, and should be furnished to the defendant by the prosecution.

---

1. The Legislature amended section 29.03 effective September 1, 1994, but the sections pertinent to Brooks' conviction remained unchanged.

2. *Gaskin v. State*, 172 Tex.Crim. 7, 353 S.W.2d 467 (1961). This rule is subsumed in TEX.R.CRIM. EVID. 614. *Washington v. State*, 856 S.W.2d 184, 188 n. 4 (Tex.Crim.App.1993) (footnote added).

Brooks presents two theories in connection with his *Gaskin* request. The first theory is that the trial court committed fundamental error in denying his request for a transcript because the *Gaskin* request satisfied the "particularized, specific need" requirement for the transcription of the trial of a third party. The second is that the failure of the trial court to order production of the statements under *Gaskin* is itself fundamental error.

Addressing the first theory we turn to the original opinion by this court. It is well settled that an indigent defendant is entitled upon timely request to be furnished without cost, for use at a subsequent trial, a transcription of his earlier mistrial, if it is needed for an effective defense. *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400, 403 (1971); *Billie v. State,* 605 S.W.2d 558, 560–61 (Tex.Crim.App. 1980). In such cases, the accused is presumed to have a need for the transcription of the court reporter's notes from his first trial. *Armour v. State,* 606 S.W.2d 891, 894 (Tex. Crim.App. [Panel Op.] 1980). Furthermore, the accused does not bear the burden of showing a particularized need for the transcript, nor of showing that the alternatives to acquire the same evidence are inadequate. *Id.*

The court of criminal appeals has refused to extend the holdings of *Britt* and its Texas progeny to cases involving an appellant's request for the transcription of the trial of a third party. *See McKibbon v. State,* 749 S.W.2d 83, 86 (Tex.Crim.App.), *cert. denied,* 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). The *McKibbon* court held that in the absence of a showing of some particularized need, the presumption of need should not be applied to transcriptions of third party trials. *Id.* Rather, the accused shall be required to demonstrate a specific need for the transcript. *Id.* Moreover, the *McKibbon* court found that a simple request for the transcript, without more, is insufficient to show a "particularized, specific need." *Id.* at 85.

Brooks made a timely request for the transcript of Madewell's testimony even though his trial had started. Ordinarily a request for transcription made after the start of the trial would not be timely. *See Hutchinson v. State,* 754 S.W.2d 746, 747 (Tex. App.—Houston [14th Dist.] 1988, no pet.). The *Hutchinson* opinion states that the request was made for a "transcript of the proceedings of the first trial in order to effectively cross-examine the state witnesses." *Id.* at 746. However, in the context of a request to use the prior testimony of the specific witness for *Gaskin* cross-examination, a timely request can be made after the witness has testified. TEX.R.CRIM. EVID. 614; *see Billie,* 605 S.W.2d at 561–62.

The complaint made by appellant in this appeal, however, is not that appellant was indigent and thus unable to afford the cost of transcribing the court reporter's notes from the prior trial. Rather, appellant contends the transcription of the court reporter's notes constituted *Gaskin* material which the State was required to produce. Under this argument, a defendant's indigency status is meaningless given the State's statutory duty to disclose to all defendants statements falling within the ambit of TEX.R.CRIM.EVID. 614(a):

(a) **Motion for Production.** After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

As used in this rule, a "statement" of a witness includes "a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof." TEX.R.CRIM.EVID. 614(f)(2). As noted above, appellant's complaint on appeal is very specific—he requests that we find the trial court abused its discretion in failing to require the State to produce

a transcription of witness Madewell's testimony from the former trial.

■ The record in the instant case shows that not only was a transcription of Madewell's testimony not in the State's possession at the time of trial, the transcription did not exist. At a post-trial hearing concerning appellant's request to include a transcript of Madewell's testimony in the record on appeal, the court reporter for the Zurfluh trial testified that because Zurfluh did not appeal his conviction, the statement of facts (the transcription of those notes from mechanical-shorthand to English) had never been prepared. At most therefore, only the court reporter's untranscribed notes were available to the parties at the time of trial. Appellant, however, does not complain that the trial court erred in failing to require the State to produce those untranscribed notes. Rather, appellant believes the trial court was under a duty to require the State to bear the expense and burden of producing a transcription of those notes for appellant's review. We disagree. The record shows the trial court determined that the transcription was not "readily accessible" to the State within the meaning of TEX.R.CRIM.EVID. 614. A party has "possession" of a statement under Rule 614(a) if it is within his control or readily accessible. *See United States v. Heath,* 580 F.2d 1011, 1018 n. 1 (10th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *Jenkins v. State,* No. 71,040, slip op. at 6, —— S.W.2d ——, —— (Tex.Crim.App., May 5, 1993) (not yet reported). We are not persuaded the trial court erred in ruling a transcription of witness Madewell's testimony was not "readily accessible" to the State.

The sixth point of error is overruled.

### EIGHTH POINT OF ERROR

■ Brooks' eighth point of error complains of the admission into evidence of his medical records from the Denton County Jail.

Brooks asserts that the medical records contain inadmissible hearsay and were not properly authenticated. The State argues that the medical records are admissible pursuant to the hearsay exception contained in TEX.R.CRIM.EVID. 803(6).

Brooks argues that the handwritten statement "[m]y leg was broken on 6–15–86 and has not healed—I can't walk correctly and my leg hurts" is inadmissable hearsay. The statement is written in response to a question in the form for requesting medical services used by the Denton County Jail. Brooks fails to cite any legal authority or analyze the pertinent law in the context of the instant facts. As a result he presents nothing for review in this case. *See Pierce v. State,* 777 S.W.2d 399, 418 (Tex.Crim.App. 1989), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990).

■ Records of a regularly conducted business activity are admissible if they are made at or near the time of the activity, recorded as part of a regularly conducted business activity, made by, or from data provided by, a person with knowledge, unless the source of information or the method of preparation indicates a lack of trustworthiness. TEX.R.CRIM.EVID. 803(6); *see Mitchell v. State,* 750 S.W.2d 378, 379 (Tex.App.— Fort Worth 1988, pet. ref'd).

■ Rule 803(6) does not require the witness laying the predicate for the introduction of the records to be the creator of the records or to have personal knowledge of the content of the records. TEX.R.CRIM.EVID. 803(6). The response to a standard question is a content of the record. The witness need only have personal knowledge of the manner in which the records were prepared. *Id.*

Lee Glover testified that he was the custodian of medical records at Denton County Jail. According to Glover's testimony, Brooks' medical records from the jail complied with the requirements of rule 803(6).

Brooks then argues that the medical records should be excluded because there was no evidence showing whose handwriting was on the exhibit, because the records were untrustworthy, or because the records were too remote from the pertinent events.

■ There is no requirement that the custodian of the records be able to identify the source of any or all of the handwritings

in the record. *See Mitchell,* 750 S.W.2d at 379. The records were maintained by Denton County to record the use of medical facilities by inmates. There is nothing apparent in the record before us to render this medical record untrustworthy enough to justify exclusion. The medical records were made during Brooks' confinement, approximately two months after the charged offense. Point of error eight is overruled.

Having overruled both points of error, we affirm the conviction and sentence.